## CIRCUIT COURT OF LOUDOUN COUNTY

Commonwealth of Virginia

v.

Joseph Lee Morris

July 26, 1995

Case No. (Criminal) 9564

BY JUDGE JAMES H. CHAMBLIN

On June 14, 1995, evidence was presented on the defendant's Motion to Suppress certain items seized from his vehicle on December 22, 1994. After consideration of the evidence, reading the transcript of the hearing and consideration of the memorandum of the defendant, the Motion to Suppress is denied.

### Findings of Fact

In the early morning hours of December 22, 1994, Detectives William Potter and Ricky Frye of the Narcotics Section of the Leesburg Town Police were on patrol in the Town of Leesburg. At approximately 1:20 a.m., they pulled their unmarked vehicle into a parking lot at the Loudoun House Apartments complex. Both detectives knew that the Loudoun House area had a higher incidence of drug arrests or transactions, especially for crack cocaine, than any other area of the town.

As they drove into the parking lot, they observed a black Saab automobile which Detective Potter knew to be driven by the defendant. The Saab was facing towards the detectives' oncoming vehicle. The defendant was sitting behind the wheel of the Saab. Lisa Woolfolk was leaning in the driver's side window. Detective knew that the defendant lived about 150 yards from where he saw the Saab vehicle.

Both detectives were well aware of the defendant. They both knew that the defendant had previously been involved with narcotics violations (crack cocaine) and had been charged in the past with drug distribution.

Ms. Woolfolk was known to Detectives Potter and Frye as a cocaine addict. She admitted during her testimony that she was using drugs during the time of this incident. Detective Potter was aware that Ms. Woolfolk had acted as a confidential informant in the past for another Leesburg police officer in the Narcotics Section.

Both detectives felt that the defendant and Ms. Woolfolk had seen them. The Saab then sped off in the direction from which the detectives had come. Ms. Woolfolk had turned around and was walking back toward an apartment building.

The detectives left their vehicle to go toward Ms. Woolfolk who was walking quickly away from them. Detective Potter finally caught up to her. Initially he asked her what she was doing with the defendant, and he told her that he believed that she was trying to buy crack cocaine from the defendant.

At first Ms. Woolfolk denied any wrongdoing. When she was asked again by Detective Potter, she stated that she was trying to trade a little gold ring to the defendant for a rock of crack cocaine. She stated further that the detectives had interrupted the transaction. She stated that before the deal (exchange) could be consummated, she and the defendant recognized the detectives and the defendant left the parking lot. Ms. Woolfolk was never arrested.

The detectives returned to their vehicle. They began to drive around in an effort to locate the black Saab. After about 15 minutes, they observed the Saab coming out of another apartment complex onto Ford Evans Road. The detectives proceeded beyond the Saab, made a U-turn, and came back behind it. Detective Potter used his radio to get a marked patrol car to assist them in stopping the Saab.

The Saab made a series of turns before pulling into the lot of the 7-Eleven Store on Plaza Street. The Saab stopped in front of the store. The defendant never operated the Saab erratically or in an illegal manner. The patrol car driven by Officer Thomas Butler pulled in behind the Saab. He then activated its blue lights. The detectives also pulled into the lot. All the officers got out of their vehicles.

Officer Butler proceeded to the driver's side door. He asked the defendant for his operator's license and registration. The detectives went to the other side of the Saab for protection because there were other persons in the vehicle.

The defendant indicated that his license was in the trunk. He exited the vehicle and went to the trunk. Just after the defendant got out of the

driver's seat, Detective Potter shined his flashlight into the vehicle and observed what he believed to be crack cocaine in the seat where the defendant had been sitting. It field-tested positive for cocaine. The defendant was arrested for possession with intent to distribute cocaine. The vehicle was impounded, and an inventory search was conducted.

## Conclusions of Law

Detectives Potter and Frye and Officer Butler did not stop the defendant at the 7-Eleven lot for the purpose of arresting him, but they temporarily detained the defendant because they had a reasonable suspicion that the defendant had engaged in criminal activity. It was not a traffic stop.

In the early morning hours of December 22, 1994, two narcotics officers observed the defendant, whom they knew had previously been arrested on a drug distribution charge, and Ms. Woolfolk, whom they knew was an admitted drug addict, talking to each other in an apartment complex known for its drug activity. The officers perceived that both the defendant and Ms. Woolfolk recognized them as they pulled into the parking lot where the defendant was seated in a Saab vehicle known to the officers. Ms. Woolfolk was leaning into the driver's side of the vehicle and was close enough to be within an arm's length of the defendant. They were within a close enough proximity of each other to effect a drug transaction. Immediately after the officers felt they had been recognized, the defendant sped away in the Saab, and Ms. Woolfolk walked quickly away.

After the officers caught up with Ms. Woolfolk, she eventually told Detective Potter that she was trying to trade a little gold ring to the defendant for a rock of crack cocaine but that the transaction was not consummated because of the appearance of the officers. Both officers knew that although Ms. Woolfolk was an admitted drug addict, she had worked as a confidential informant for another narcotics officer. It is reasonable to infer that Ms. Woolfolk would not have asked the defendant to participate in a criminal act unless she had some reason to believe that he had crack cocaine.

I am of the opinion that the conduct of the defendant and Ms. Woolfolk observed by the narcotics officers coupled with the statements subsequently made to Detective Potter by Ms. Woolfolk led the officers to the reasonable conclusion in light of their past experience that the defendant had been engaged in some criminal activity. The officers had a reasonable suspicion based on specific, objective facts as required by *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968), and subsequent cases.

The detention of the defendant at the 7-Eleven parking lot was a stop for purposes of a temporary detention. A reasonable person would not have felt that he was free to leave once the police car pulled in behind him, its blue lights were activated, and an officer asked for his license and registration. These actions by the officers did not rise to the level of an arrest but only a permissible temporary stop to investigate possible criminal activity.

The defendant argues that the officers did not have probable cause to arrest the defendant before the stop at the 7-Eleven. I agree because Detective Potter failed to obtain from Ms. Woolfolk the defendant's statements to her or observe his conduct when she tried to trade the ring for a rock of crack cocaine. However, for reasons stated above, the officers had a reasonable suspicion for an investigatory stop of the defendant. Simply, the officers had enough of a reasonable suspicion for an investigatory stop, but they did not have probable cause for an arrest before the stop.

### Order

The Clerk will prepare an order denying the Motion to Suppress. All exceptions of the defendant are noted.